NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHRYN D'AMBOLA and CHRISTOPHER D'AMBOLA, her husband,<br><br>Plaintiffs,<br><br>v.<br><br>DAILY HARVEST, INC., et al.,<br><br>Defendants. | Case No. 22cv6316 (EP) (ESK)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiffs Kathryn and Christopher D'Ambola filed this products liability action against Defendants Daily Harvest, Inc. ("Daily Harvest"), Second Bite Foods, Inc. d/b/a Stone Gate Foods ("Stone Gate Foods"), and Smirk's, Ltd. ("Smirk's") (collectively, "Defendants") after falling ill upon consumption of Daily Harvest's now-recalled French Lentil + Leek Crumbles product. D.E. 7 ("FAC"). Daily Harvest has moved to compel arbitration or, in the alternative, to transfer this action to the Southern District of New York ("SDNY"). D.E. 6-1 ("Mot."). The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b). For the following reasons, the motion will be **GRANTED** with respect to the request to transfer.

I. **BACKGROUND**[1]

Plaintiffs Kathryn and Christopher D'Ambola[2] are spouses, residing in New Jersey. FAC ¶ 1. Daily Harvest, headquartered and having its principal place of business in New York, is a direct-to-consumer, subscription-based food delivery service. *Id.* ¶¶ 2, 12. In April 2022, Daily Harvest announced the launch of its now-recalled French Lentil + Leek Crumbles product ("Lentil Product"). *Id.* ¶ 10. Stone Gate Foods, headquartered and having its principal place of business in Minnesota, was the manufacturer of Daily Harvest's Lentil Product. *Id.* ¶¶ 3, 13. Smirk's, headquartered and having its principal place of business in Colorado, was the supplier of the Tara flour ingredient in Daily Harvest's Lentil Product. *Id.* ¶¶ 4, 14.

In early April 2022, Kathryn purchased, through an online subscription, one of Daily Harvest's weekly subscription meal plans. *Id.* ¶ 9. In late May 2022, Kathryn received her weekly subscription meal plan from Daily Harvest, which included the Lentil Product. *Id.* ¶ 15. In early June 2022, within a few hours of eating the Lentil Product, Kathryn experienced extreme abdominal, back, and shoulder pain, as well as vomiting. *Id.* ¶¶ 17-18. Following two trips to the emergency room, Kathryn underwent laparoscopic gallbladder surgery to remove her gallbladder. *Id.* ¶¶ 18-21. Approximately one week later, the D'Ambolas ate the Lentil Product, and that same night, they both experienced extreme back pain and cramps emanating from the gallbladder area.[3] *Id.* ¶¶ 23-24. The next day, Kathryn spiked a fever, suffered from chills, and body aches, which

---

[1] The facts in this section are taken from the well-pled factual allegations in the First Amended Complaint ("FAC"), which the Court presumes to be true for purposes of resolving the instant motion. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).
[2] When referred to individually, Plaintiff Kathryn D'Ambola is referred to as "Kathryn," Plaintiff Christopher D'Ambola is referred to as "Christopher," and when referred to collectively, Kathryn and Christopher are referred to as the "D'Ambolas."
[3] The FAC makes no mention as to whether Christopher ever sought medical treatment for these symptoms.

culminated in a hospital visit, where tests revealed she had elevated liver enzymes. *Id.* ¶ 25. Kathryn continues to suffer from severe distress, pain, and other physical discomfort, and has incurred substantial medical expenses. *Id.* ¶¶ 26-27.

On August 4, 2022, the D'Ambolas filed this action against Daily Harvest in the Superior Court of New Jersey. *See* D.E. 1-2. Daily Harvest timely removed this action to this Court. *See* D.E. 1. Daily Harvest moves to compel arbitration or, in the alternative, to transfer this action to SDNY. *See generally* Mot. The D'Ambolas subsequently filed their five-count FAC and, on the same day, their opposition to Daily Harvest's motion. *See* D.E.s 6-1, 7. The FAC added Stone Gate Foods and Smirk's as Defendants. *See* FAC ¶¶ 3-4. Daily Harvest has replied. D.E. 17 ("Reply"). Stone Gate Foods has consented to Daily Harvest's request to transfer this action. D.E. 20. Daily Harvest's motion is ripe for review.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), district courts have discretion to transfer, "[f]or the convenience of parties and witnesses, in the interests of justice…any civil action to any other district or division where it might have been brought[.]" *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973) (noting that district courts are vested with wide discretion in deciding a Section 1404(a) motion) (citations omitted). Thus, on a Section 1404(a) motion, a district court must make two determinations: "(1) whether the case could have been brought in the proposed transferee district, and (2) whether transfer is in the interests of justice and convenience." *Goldstein v. MGM Grand Hotel & Casino*, 2015 U.S. Dist. LEXIS 150982, at *2 (D.N.J. Nov. 4, 2015) (citing *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010)). Analysis under Section 1404(a) is flexible and must consider the unique facts of each case. *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000); *Ricoh Co., Ltd. v. Honeywell, Inc.*,

817 F. Supp. 473, 479 (D.N.J. 1993) (same).  Moreover, it is the moving party's burden to establish that the transfer is appropriate, and that the transferee forum is more convenient than the transferor forum.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

However, where there is a valid forum selection clause, the traditional Section 1404(a) analysis changes because "the interest of justice is served by holding parties to their bargain," which means that "controlling weight" should typically be given to a valid forum selection clause.  *Kidstar v. Facebook, Inc.*, 2020 U.S. Dist. LEXIS 136035, at *11 (D.N.J. July 31, 2020) (quoting *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013)) (citation omitted).

### III.   ANALYSIS

The Court finds that this action might have been brought in SDNY, that there is a valid forum selection clause, and that the interests of justice and convenience favor transfer; therefore, for the reasons discussed below, this action will be transferred to SDNY.  The Court defers to the transferee forum the decision on Daily Harvest's request to compel arbitration.

#### A.   **Appropriate Venue**

The first step in analyzing a Section 1404(a) motion is to determine whether the proposed transferee district is a "district in which this action might have been brought."  *Goldstein*, 2015 U.S. Dist. LEXIS 150982, at *4 (quoting 28 U.S.C. § 1404(a)) (citation omitted).  In this regard, district courts consider "whether the proposed transferee district has: '(1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue [pursuant to 28 U.S.C. § 1391(b)].'"  *Id.* (quoting *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006)) (citation omitted).

Here, the Court finds that this action "might have been brought" in SDNY.  First, SDNY would have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the D'Ambolas are

4

citizens of a state different from each Defendant and the amount in controversy exceeds $75,000. *See Wersinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002); FAC ¶¶ 1-4; D.E. 11 (joint certification of diverse citizenship).

Second, SDNY may exercise personal jurisdiction over all Defendants. Specifically, Daily Harvest has its headquarters and principal place of business in New York, which provides a sufficient basis for personal jurisdiction. *See Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). With respect to Stone Gate Foods and Smirk's, New York's longarm statute appears to provide a basis for personal jurisdiction, because as a manufacturer and a supplier, respectively, of Daily Harvest's Lentil Product, these Defendants presumably contracted to supply goods or services to Daily Harvest in New York. *See N.Y. C.P.L.R. § 302(a)(1)* (New York's longarm statute provides: "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state.").

Lastly, venue is proper in SDNY. Specifically, one basis for proper venue pursuant to Section 1391(b) is whether "a substantial part of the events or omissions giving rise to the claim occurred" in the district, or "a substantial part of property that is the subject of the action is situated" in the district. *Mehta v. Angell Energy*, 2019 U.S. Dist. LEXIS 171612, at *11 (D.N.J. Sept. 30, 2019). Here, a substantial part of the alleged wrongdoing giving rise to the D'Ambolas' claims occurred in New York, as that is where Daily Harvest marketed, sold, and distributed its Lentil Product to its customers. *See* Silver Dec. ¶ 18.

Accordingly, the D'Ambolas might have brought this action in SDNY.

5

### B. Forum Selection Clause

Relevant to the Section 1404(a) analysis is whether there is a valid forum selection clause, which the Court finds there is here.  "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law."  *Id.* at 877 (citation omitted).  Forum selection clauses may be enforced through a Section 1404(a) motion.  *Knierim v. Siemens Corp.*, 2008 U.S. Dist. LEXIS 26571, at *55 (D.N.J. Mar. 31, 2008) (citing *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297-98 (3d Cir. 2001).  In the Third Circuit, forum selection clauses are presumptively valid and will be enforced.  *Id.* at *57 (citations omitted); *see also Atl. Marine Constr. Co.*, 571 U.S. at 52 ("[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a) [and] a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.").

For the D'Ambolas to purchase a Daily Harvest weekly subscription plan, they were required to create a Daily Harvest account on Daily Harvest's webpage that included disclosures stating, "[b]y clicking above, you agree to our <u>Terms of Use</u> and <u>Terms of Sale</u>, and consent to our <u>Privacy Policy</u>."  D.E. 6-2 ("Silver Dec.") ¶ 6 (underlined terms were hyperlinks).  Additionally, to place an actual order, the D'Ambolas were required to affirmatively click a checkbox acknowledging, "I've read and accept the <u>terms & conditions</u>."  *Id.* ¶ 7 (underlined terms were hyperlinks).  Daily Harvest's Terms of Use include a forum selection clause, which explicitly states, "[t]hese Terms are governed by and will be construed under the Federal Arbitration Act, applicable federal law, and the laws of New York, without regard to the conflicts of laws provisions thereof."  D.E. 6-3 ("Terms of Use") ¶ 19.

The Court begins with the presumption that the forum selection clause in Daily Harvest's Terms of Use is presumptively valid and enforceable against the D'Ambolas. *See Kidstar*, 2020 U.S. Dist. LEXIS 136035, at *9 (citing *Atl. Marine Constr. Co.*, 571 U.S. at 63). It is the D'Ambolas' heavy burden to establish that the forum selection clause is unenforceable. *See id.* (citing *Mucciariello v. Viator, Inc.*, 2019 U.S. Dist. LEXIS 166696, at *5 (D.N.J. 27, 2019)) (citation omitted). The forum selection will be deemed unenforceable only if the D'Ambolas can establish: "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 846 (3d Cir. 2003) (citations omitted).

Significantly, "unconscionability and lack of mutuality between the parties are not defined…as grounds on which to find a forum selection clause unenforceable." *Zhang*, 2021 U.S. Dist. LEXIS 98529, at *21 (D.N.J. May 25, 2021) (citation and internal quotation marks omitted). And "[f]orum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause." *Id.* at *21-22 (citation and internal quotation marks omitted).

In their opposition, the D'Ambolas do not contend that the relevant forum selection clause is the result of fraud or overreaching, nor that it violates public policy—two of the grounds for finding that a forum selection clause is unenforceable. *See generally* D.E. 8 ("Opp'n"). The D'Ambolas do address the third ground for finding that a forum selection clause is unenforceable, which the Court addresses below.

First, the D'Ambolas assert that the forum selection clause is unenforceable because "it was an inconspicuous, hidden term to which Daily Harvest cannot demonstrate was agreed to by

7

Plaintiffs." *Id.* at 27. This assertion is unavailing. The format and layout of Daily Harvest's webpage provided the D'Ambolas with reasonable notice of the Terms of Use before signing up for a Daily Harvest account, as well as before placing an order. *See Zhang v. Gain Capital Holdings, inc.*, 2021 U.S. Dist. LEXIS 98529, at *18-21 (D.N.J. May 25, 2021) (finding forum selection clause included in Customer Agreement that was presented twice in blue hyperlinked text on webpage to open an account was sufficiently conspicuous and enforceable). Specifically, Daily Harvest's webpage included, in the same size font as the wording on the rest of the webpage, an underlined hyperlink to Daily Harvest's Terms of Use. *See* Silver Dec. ¶ 6. Moreover, the D'Ambolas were required to affirmatively click a checkbox indicating that they had read those terms before being able to place an order. *See id.* ¶ 7.

That the D'Ambolas failed to read the Terms of Use, which Daily Harvest made accessible to them via hyperlink, is not reason to find the forum selection clause unenforceable. *See Home Source Indus., LLC v. Freightquote.com, Inc.*, 2014 U.S. Dist. LEXIS 162659, at *13 ("A failure to read the terms and conditions, and specifically, the forum selection clause, does not render the forum selection clause invalid or diminish its force and effect."); *Toll Bros., Inc. v. Fields*, 2011 U.S. Dist. LEXIS 10981, at *9 (D.N.J. Feb. 4, 2011) ("[F]ailure to 'read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.'") (citation omitted).

Second, the D'Ambolas contend that the forum selection clause is unenforceable because it is "unjust and unreasonable." Opp'n at 29. But a forum selection clause is unreasonable only if its "enforcement [] would be so gravely difficult and inconvenient as to be unreasonable and unjust and that it would deprive the party of its day in court." *Elli v. Genmab, Inc.*, 2006 U.S. Dist. LEXIS 74615, at *8 (D.N.J. Oct. 13, 2006). Here, enforcement of the forum selection clause

would require the D'Ambolas to travel less than 15 extra miles[4] to litigate this action in compliance with the forum selection clause.  This negligible increased distance does not rise to the level of "so gravely difficult and inconvenient as to be unreasonable and unjust." *See Intermetals Corporation v. Hanover International*, 188 F. Supp. 2d 454, 460 (D.N.J. 2001) (upholding a forum selection clause requiring the parties to litigate overseas in Austria, despite the additional expense and inconvenience to the plaintiff).  Moreover, the D'Ambolas do not assert that they would be deprived of their day in court if this Court were to transfer this action to SDNY.  Accordingly, the Court finds the forum selection clause in Daily Harvest's Terms of Use is not unjust and unreasonable.

Third, the D'Ambolas posit that the forum selection clause could not be enforced against Christopher because he never agreed to any terms and conditions on Daily Harvest's webpage.  Opp'n at 29.  The FAC contains only one claim relevant to Christopher: loss of consortium.  *See* FAC ¶¶ 51-53.  Significantly, "[a] claim for consortium cannot be maintained as an independent cause of action." *Rickerson v. Pinnacle Foods Inc.*, 2017 U.S. Dist. LEXIS 200342, at *15 (D.N.J. Dec. 5, 2017) (citing *Ali v. Jersey City Parking Auth.*, 2014 U.S. Dist. LEXIS 52547, at *19 (D.N.J. Apr. 16, 2014)).  "Rather, '[l]oss of consortium is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse.'" *Id.* (quoting *Reiff v. Convergent Techn.*, 957 F. Supp. 573, 58 (D.N.J. 1997)).  Because the forum selection clause in Daily Harvest's Terms of Use is enforceable as to Kathryn, her tort claims will be transferred to SDNY.  Without the survival of Kathryn's tort claims in this District, Christopher's loss of consortium claim, which entirely

---

[4] Distance between 50 Walnut St., Newark, NJ 07102 (D.N.J. Courthouse) and 500 Pearl St., New York, NY 10007 (S.D.N.Y. Courthouse).  *See Berkshire Fashions, Inc. v. The M.V. Hakusan II*, 954 F.2d 874, 885 n.6 (3d Cir. 1992) (citing *Spearing v. Manhattan Oil Transp. Corp.*, 375 F. Supp. 764, 769 (S.D.N.Y. 1974) (judicially noticing a geographical distance)).

depends on the viability of Kathryn's tort claims, cannot remain in this District either. Accordingly, the Court finds that Christopher's loss of consortium claim must be transferred alongside Kathryn's underlying tort claims.

For the foregoing reasons, the Court concludes the D'Ambolas have not met their burden to overcome the forum selection clause's presumptive validity. *See Kidstar*, 2020 U.S. Dist. LEXIS 136035, at *10 (finding the plaintiff could not overcome the presumptive validity of Facebook's forum selection clause where the plaintiff failed to adequately address the three grounds for declining to enforce a forum selection clause). Accordingly, the valid forum selection clause in Daily Harvest's Terms of Use will be enforced, unless the interests of justice and convenience weigh against enforcement.

### C. Interests of Justice and Convenience

The Third Circuit has outlined several private and public interest factors for consideration when determining whether the interests of justice and convenience permit transfer pursuant to a Section 1404(a) motion. *See Jumara*, 55 F.3d at 879-80. The Court concludes the interests of justice and convenience favor transfer.

The private interest factors include: (1) the plaintiff's forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records, but only to the extent that the files could not be produced in the alternative forum. *Id.* The public interest factors include: (1) the judgment's enforceability; (2) the practical considerations that could make the trial, easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court

congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

However, as noted above, *supra* Section II, a valid forum selection clause alters the typical "interests of justice and convenience" analysis conducted on a Section 1404(a) motion. Specifically, the analysis changes in three ways: "(1) 'the plaintiff's choice of forum merits no weight' as [she] seeks to defy the forum selection clause to which [she] agreed; (2) the court does not consider the parties' private interests, but may still consider public interest factors; and (3) the transferee court, 'in the contractually selected venue[,] should not apply the law of the transferor venue to which the parties waived their right.'" *Kidstar*, 2020 U.S. Dist. LEXIS 136035, at *11-12 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 63-66). Significantly, an enforceable forum selection clause will only be rejected "in the exceptional case" where the "public-interest factors overwhelmingly disfavor a transfer.") *Id.* at *12 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 67) (internal quotation marks omitted).

Here, the D'Ambolas attempt to explain why the traditional Section 1404(a) analysis weighs against transfer. Opp'n at 30-34. This argument is unconvincing. The D'Ambolas look to the private interest factors, *i.e.*, the D'Ambolas selected New Jersey as the forum state, to support their argument, *see* Opp'n at 30-32, but in light of the valid forum selection clause, the Court need only consider the public interest factors. *See Mehta*, 2019 U.S. Dist. LEXIS 171612, at *9 (explaining that "the plaintiff's choice of forum merits no weight" and "the parties waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation," in light of valid forum selection clause) (citation omitted). Thus, the Court does not address the private interest factors and turns to the public interest factors.

The D'Ambolas assert that the public interest factors weigh against transfer. The Court disagrees. Specifically, the first public interest factor, enforceability, weighs in favor of transfer, given that Daily Harvest is headquartered and has its principal place of business in New York. Therefore, a district court within that forum may be able to enforce a judgment with greater ease. *See Mucciariello v. Viator, Inc.*, 2019 U.S. Dist. LEXIS 166696, at *21-22 (D.N.J. Sept. 27, 2019) (finding location of the defendant's parent company weighed in favor of transfer due to greater ease of enforceability); *Yacovella v. Apparel Imps., Inc.*, 2015 U.S. Dist. LEXIS 115291, at *26 (D.N.J. Aug. 31, 2015) ("Defendants are all located in Florida, and therefore, a Florida court can enforce a judgment against Defendants with greater ease than this Court.").

Similarly, the second public interest factor, practical considerations, also weighs in favor of transfer, because Daily Harvest operates (and engages with the other Defendants and its customers) from New York. *See id.* at *22 (finding that because the defendant's parent company operated from the proposed transferee forum that practical considerations weighed in favor of transfer). Likewise, the third public interest factor, administrative difficulty, weighs in favor of transfer, given the, at least, fifty-two analogous pending actions before Judge Cote in SDNY. *See, e.g.*, Amended Complaint, *Albright v. Daily Harvest, Inc., et al.*, No. 22-5987 (S.D.N.Y. July 15, 2022), D.E. 4; Complaint, *Burkatzky v. Daily Harvest, Inc., et al.*, No. 23-1607 (S.D.N.Y. Feb. 27, 2023), D.E. 1; Complaint, *Thomas v. Daily Harvest, Inc., et al.*, No. 23-2607 (S.D.N.Y. Mar. 28, 2023), D.E. 1.

As to the fourth public interest factor, local interest, the D'Ambolas fleetingly provide: "the public factor of the burden of jury duty should remain in New Jersey where [the D'Ambolas] reside, and also there is a local interest in adjudicating a local dispute, which clearly arose in the selected forum state." *See* Opp'n at 33-34. While it is true that "the unfairness of burdening

citizens in an unrelated forum with jury duty" is relevant, SDNY is not a forum "unrelated" to this action. *See Windt v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 192 (3d Cir. 2008) (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1946)).  In fact, New York, not New Jersey, is the locus of the alleged wrongdoing; New York is where the Lentil Product was developed, as well as where key decisions regarding the marketing, sale, and distribution of the Lentil Product were made. *See* Silver Dec. ¶ 18; *Pearson v. Daily Harvest, Inc.*, 2023 U.S. Dist. LEXIS 64011, at *10-11 (D. Or. Apr. 12, 2023) ("Simply put, the thrust of this action took place in New York—that is where the [Lentil Product] was developed and where key decisions regarding the product were made, including the sourcing of the raw materials, and the development, production, and marketing of the product.").  That the D'Ambolas felt the effects of the alleged wrongdoing (*i.e.*, hospitalizations) in New Jersey does not make this dispute one local to New Jersey. *See Pearson*, 2023 U.S. Dist. LEXIS 64011, at *11 ("Additionally, the parties' briefing suggests that the central issue in this case is not the type or extent of plaintiff's injuries but rather the apportionment and extent of defendants' [Daily Harvest, Stone Gate Foods, and Smirk's] liability for the [Lentil Product].") (citation omitted).  Thus, the local interest factor weighs in favor of transfer.

The fifth and sixth public interest factors, public policy and relevant state law, respectively, are both neutral.

Lastly, the D'Ambolas' argue that the fact that one SDNY-based judge has two analogous pending Daily Harvest actions is insufficient to support transfer here.  Without specific identification, the D'Ambolas posit that "there are also a number of other lawsuits pending in other jurisdictions, including Oregon and California." Opp'n at 33.  However, there are not just two analogous pending Daily Harvest actions in SDNY before Judge Cote, but rather, there are at least

13

fifty-two.[5] Furthermore, the District of Oregon action was also recently transferred to SDNY; the district court reasoned that "judicial economy and efficiency, the risk of inconsistent decisions, and the overall convenience to the parties and witnesses outweigh the inconvenience to plaintiff." *Pearson*, 2023 U.S. Dist. LEXIS 64011, at *1-2. Therefore, preventing inconsistent decisions heavily weighs in favor of transfer.

Accordingly, the interests of justice and convenience convincingly weigh in favor of transfer.

### IV. CONCLUSION

For the reasons discussed above, Daily Harvest's motion to compel arbitration, or in the alternative, to transfer this action to SDNY will be **GRANTED** with respect to the request to transfer this action. This Court does not decide Daily Harvest's request to compel arbitration, but instead, leaves this request for the transferee forum to decide. An appropriate Order accompanies this Opinion.

Dated: May 30, 2023

Evelyn Padin, U.S.D.J.

---

[5] In one such action, *Peni v. Daily Harvest, Inc.*, Judge Cote recently granted the defendants' motion to compel arbitration. 2022 U.S. Dist. LEXIS 205311, at *1 (S.D.N.Y. Nov. 10, 2022).